# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00332-CV

Gordon G. McWatt, D.O., Appellant

v.

David Mattax,[1] Texas Commissioner of Insurance;
Ryan Brannan,[2] Commissioner of Workers' Compensation; and
Texas Department of Insurance, Division of Workers' Compensation, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. D-1-GN-11-002737, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

# M E M O R A N D U M   O P I N I O N

Gordon G. McWatt, D.O., filed suit in Travis County district court seeking judicial review of a decision and order signed by an administrative law judge (ALJ) with the State Office of Administrative Hearings (SOAH), assessing administrative penalties in the amount of $15,000 for violations of certain reporting and record-keeping requirements imposed on doctors who certify an injured worker's maximum medical improvement, determine whether permanent impairment exists, and assign the injured worker an impairment rating. *See* Tex. Lab. Code § 408.123 (governing procedure for certifying that injured employee has reached maximum medical improvement and

---

[1] We substitute David Mattax, in his official capacity, as successor to Eleanor Kitzman, as Texas Commissioner of Insurance. *See* Tex. R. App. P. 7.2(a).

[2] We substitute Ryan Brannan, in his official capacity, as successor to Rod Bordelon, Commissioner of Workers' Compensation. *See id.*

assigning impairment rating); 28 Tex. Admin. Code § 130.1 (Tex. Div. of Workers' Comp., Certification of Maximum Med. Improvement & Evaluation of Permanent Impairment).[3] McWatt also sought judicial review of an order signed by the Commissioner of the Division of Workers' Compensation (the Division) ordering him to attend an educational course conducted by the Division as a non-monetary administrative penalty for the same reporting and record-keeping violations. The trial court affirmed the agency orders. We will affirm the trial court's judgment.

## BACKGROUND

McWatt was employed by Concentra Health Services, Inc. and has served as a "designated doctor" for the Division since 1999.[4] As a designated doctor, McWatt was authorized to certify an injured worker's maximum medical improvement (MMI),[5] determine whether permanent

---

[3] Rule 130.1 was amended in 2013. *See* 38 Tex. Reg. 5263 (codified as an amendment to 28 Tex. Admin. Code § 130.1). The Division applied the pre-amendment version of rule 130.1 and, unless otherwise indicated, all references to the rule in this opinion are as it existed prior to the 2013 amendment.

[4] "Designated doctor" means a doctor appointed by mutual agreement of the parties or by the Division to recommend a resolution of a dispute as to the medical condition of an injured employee. Tex. Lab. Code § 401.011(15).

[5] "Maximum medical improvement" is defined as the earlier of "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated" (referred to as "clinical maximum medical improvement") or "the expiration of 104 weeks from the date on which income benefits begin to accrue" (referred to as "statutory maximum medical improvement"). *Id.* § 401.011(30). In order to obtain impairment benefits, an employee must be certified by a doctor as having reached maximum medical improvement and must be assigned an impairment rating by a certifying doctor. *Id.* § 408.123(a). An impairment rating is defined as "the percentage of permanent impairment of the whole body resulting from the current compensable injury." 28 Tex. Admin. Code § 130.1(c)(1) (Tex. Div. of Workers' Comp., Certificate of Maximum Med. Improvement & Evaluation of Permanent Impairment).

2

impairment existed, and assign an impairment rating. 28 Tex. Admin. Code § 130.1(a). To certify maximum medical improvement and assign an impairment rating, the certifying doctor makes a written "Report of Medical Evaluation." *Id.* § 130.1(d). A report of medical evaluation consists of a completed Division-generated form (DWC Form-69) and the accompanying medical narrative. *In re Xeller*, 6 S.W.3d 618, 621 n.3 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). The form, entitled "Report of Medical Evaluation," is a medical record filled out and signed by the doctor. It asks for a diagnosis and narrative history of the employee's medical condition, inquires whether the employee has reached MMI, and requests objective findings. *Id.* Division rule 130.1 sets forth the certifying doctor's reporting and record-keeping requirements for the report of medical evaluation. 28 Tex. Admin. Code § 130.1(d), (e).

In March 2008, the Division notified McWatt that it would conduct an audit "of the timeliness of [McWatt's] submission of the Division of Workers' Compensation Report of Medical Evaluation (DWC Form-69) to the insurance carrier" for the time period of June 1 through December 31, 2007. The notice informed McWatt that the audit was a compliance audit performed pursuant to Labor Code section 414.002 and administrative rule 180.3. *See* Tex. Lab. Code § 414.002 (Division shall monitor workers' compensation system participants, including health care providers, for compliance with applicable rules and statutes); 28 Tex. Admin. Code § 180.3 (Tex. Div. of Workers' Comp., Compliance Audits). Specifically, the notice advised McWatt:

> The primary focus of this review will be for compliance with Commissioner Rules 126.7, 130.1, and 130.3. Commissioner Rules 130.1 and 130.3 require a doctor who certifies an injured employee to be at Maximum Medical Impairment (MMI) to file the DWC Form-69 with the Division, injured employee, injured employee's representative, and the carrier no later than the seventh working day after the later of:

3

the date of the certifying examination, or the receipt of all of the required medical information. Furthermore, Rule 130.1(d)(3)(A) requires a certifying doctor to file the DWC Form-69 with the carrier by facsimile or electronic transmission. In addition, Rule 126.7 requires the designated doctor to file the report even if the doctor does not find the employee to be at MMI.

Rule 130.3(e) requires a doctor required to file the DWC Form-69 to maintain the original copy of the DWC Form-69 and narrative and documentation of the date, addresses, facsimile numbers/email addresses and means of delivery that the reports were transmitted or mailed including proof of successful transmission. In addition, a certifying doctor shall maintain documentation of the date of the examination and the date any medical records necessary to make the certification of MMI were received, and from whom the medical records were received.

The Division issued its final audit report in June 2008. According to the Division, the audit revealed that of the 88 DWC Form-69s reviewed, only 20 were timely sent to the insurance carrier and only 36 were sent to the insurance carrier by facsimile or electronic transmission.

In May 2009, the Division sent McWatt a notice of possible administrative violations and notice of intent to institute a disciplinary action based on the audit findings indicating that McWatt had committed "multiple administrative violations." The notice referenced the Division's audit findings regarding McWatt's alleged failure to timely send DWC Form-69s to insurance carriers and to send those forms by facsimile or electronic transmission. The Medical Examiner charged with making a recommendation to the Commissioner regarding an appropriate sanction determined that (1) McWatt violated Division rule 130.1(d)(2) each time he failed to timely file a DWC Form-69, and (2) McWatt violated Division rule 130.1(d)(2) and (d)(3)(A) each time he failed to send the DWC Form-69 to the carrier by facsimile or electronic transmission. The Medical Advisor recommended as a sanction that McWatt be suspended from serving as a designated doctor for 90 days. The Division Staff also charged McWatt with violating rule 130.1(d)(2) 67 times, one

4

violation for each failure to timely send the DWC Form-69 to the insurance carrier, and violating rule 130.1(d)(2) and 130.1(d)(3)(A) 51 times, one violation for each failure to send the DWC Form-69 to the insurance carrier by facsimile or electronic transmission. According to the staff, these 118 violations of rule 130.1 also constituted two violations of rule 180.12's minimum required rates of compliance, and that each of the 120 violations was an additional administrative violation because each was an instance of violation, failure to comply with, or refusal to comply with the Workers' Compensation Act or a rule, order, or decision of the commissioner. *See* Tex. Lab. Code § 415.021(a). The Staff charged McWatt with a total of 240 administrative violations and proposed an administrative penalty of $50,000.

The May 2009 notice informed McWatt that he had the right to consent to the charges and the proposed administrative penalty or to contest the charges and the proposed penalty by requesting a hearing. On McWatt's request, the case proceeded to a hearing at SOAH before an ALJ. At the hearing, the Division requested that the ALJ order McWatt to pay a monetary administrative penalty. The Division also sought a proposal for decision recommending that the Commissioner order non-monetary sanctions of suspension from acting as a designated doctor for 90 days and attendance at an educational course conducted by the Division addressing the responsibilities of health care providers in the Texas Workers' Compensation system. *See id.* §§ 402.073(b) (ALJ makes final decision to assess monetary penalties and orders payment); (c) (ALJ issues proposal for decision for Commissioner's review in cases involving non-monetary sanctions).[6] After the

[6] Some of the Texas Labor Code provisions at issue in this case were changed by amendments to the statute that became effective September 1, 2011. *See* Act of May 29, 2011, 82d Leg., R.S., ch. 1162, 2011 Tex. Gen. Laws 3010-24. Unless otherwise indicated, references in

5

hearing, the ALJ issued a proposal for decision recommending that the Commissioner impose non-monetary sanctions consisting of a 60-day suspension from serving as a designated doctor and attendance at an educational seminar. The ALJ also ordered McWatt to pay a monetary administrative penalty of $15,000.

The Commissioner amended the ALJ's findings of fact and conclusions of law to correct technical errors and to delete the recommended suspension. The Commissioner explained that he deleted the suspension in recognition of McWatt's testimony that he quit his employment with Concentra as part of his commitment to improving his performance and compliance, the fact that some, though not all, of McWatt's reporting violations were caused by "a computer glitch experienced by Concentra," and the ALJ's assessment of a $15,000 monetary penalty. The Commissioner ordered McWatt to attend an educational course conducted by the Division focusing on the roles and responsibilities of health care providers participating in the Texas Workers' Compensation system, as recommended by the ALJ.

McWatt then filed a suit for judicial review challenging the ALJ's order assessing the monetary penalty and a separate suit for judicial review of the Commissioner's order. He sought declaratory relief related to the agency's authority to impose the monetary and non-monetary sanctions and requested that the trial court reverse the orders pursuant to Texas Government Code section 2001.174(2). *See* Tex. Gov't Code § 2001.174(2) (setting forth circumstances requiring reversal of agency's decision in contested case). The district court consolidated the cases and, after

---

this opinion to the Texas Labor Code are to the statutes as they existed before the 2011 amendments and as they applied to the underlying proceedings.

conducting a hearing, affirmed both the ALJ's order imposing an administrative penalty of $15,000 and the Commissioner's order imposing the non-monetary sanction. The judgment also reflects that, by the time it was rendered, McWatt had attended the educational course as ordered by the Commissioner. McWatt then perfected this appeal.

## DISCUSSION

Section 2001.174 of the Texas Government Code provides the standard for judicial review of the ALJ's and the Commissioner's orders. *See id.* § 2001.174. Under this standard we may not, with respect to questions committed to its discretion, substitute our judgment on the weight of the evidence for that of the agency. *Id.* We must, however, reverse an order if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* An agency order is presumed to be valid, and it is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). The evidence in the record may preponderate against the agency's decision yet still provide a reasonable basis for the decision and thereby meet the substantial-evidence standard. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). The party challenging the order has the burden of demonstrating

7

a lack of substantial evidence. *CenterPoint Energy Entex v. Railroad Comm'n*, 213 S.W.3d 364, 369 (Tex. App.—Austin 2006, no pet.) (citing *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994)).

***Authority to Issue Orders***

In his first issue, McWatt asserts that the Commission and the ALJ lacked authority to issue their orders. McWatt maintains that the ALJ did not have the authority to both issue an order imposing monetary penalties and simultaneously prepare a PFD making a recommendation to the Commission regarding non-monetary sanctions. McWatt does not contest the ALJ's authority to make findings of fact and conclusions of law related to monetary sanctions, nor does he contend that the ALJ did not have the authority to order payment of a monetary penalty for administrative violations. *See* Tex. Lab. Code §§ 402.073(b) (providing that in hearing conducted under sections 413.031,[7] 413.055,[8] and 415.034,[9] ALJ who conducts hearing "shall enter the final decision in the case after completion of the hearing"); 415.034(b) (providing that if officer conducting hearing on charge of administrative violations determined that violation has occurred, "hearing officer shall include in the decision the amount of the administrative penalty assessed and shall order payment

---

[7] Section 413.031 addresses hearings to resolve disputes about payment to health care providers for medical services rendered to an injured worker under the Workers' Compensation Act. *See* Tex. Lab. Code § 413.031 (medical dispute resolution).

[8] Section 413.055 addresses hearings on disputes related to Commission orders for payment of all or part of an injured worker's medical benefits. *See id.* § 431.055 (interlocutory orders for payment of all or part of medical benefits).

[9] Section 415.034 addresses the procedures for hearings, as in the present case, conducted at the request of a party charged with an administrative violation under the Workers' Compensation Act. *See id.* § 415.034 (hearing procedures).

8

of the penalty"). Nor does McWatt contend that the Commission cannot issue an order imposing non-monetary sanctions based on an ALJ's findings of fact and conclusions of law and proposal for decision made after a hearing conducted to consider imposing non-monetary sanctions on a person regulated by the Division under the Workers' Compensation Act. *See id.* § 402.073(c) (providing that for hearings not conducted under sections 413.031, 413.055, or 415.034, ALJ who conducts hearing "shall propose a decision to the commissioner for final consideration and decision by the commissioner"). Rather, McWatt asserts that an ALJ does not have the authority to hold a combined hearing on the Division's request for both non-monetary sanctions and monetary penalties and, consequently, the ALJ's issuance of an order imposing monetary penalties and a PFD addressing the Division's request for non-monetary sanctions and the Commission's issuance of its order based on that PFD were unauthorized *ultra vires* acts. We disagree.

The Texas Labor Code provisions in effect at the time of the hearing required that, in hearings conducted at the request of a party charged with an administrative violation, the ALJ "shall enter the final decision in the case after completion of the hearing," *see id.* § 402.073(b), and if the ALJ determined that an administrative violation occurred, it "shall include in the decision the amount of the administrative penalty assessed and shall order payment of the penalty." *Id.* § 415.034(b). In all other hearings conducted to impose sanctions on a participant in the Workers' Compensation system, the ALJ conducting the hearing "shall propose a decision to the commissioner for final consideration and decision by the commissioner." *Id.* § 402.073(c). Thus, each of the ALJ's dispositions—the final order imposing monetary penalties and the proposal for decision recommending non-monetary sanctions—was independently authorized by statute.

In the present case, based on its investigation of McWatt's compliance with his reporting and record-keeping obligations under the Workers' Compensation Act, the Division sought both the imposition of a monetary penalty for administrative violations and a recommendation that the Commission impose the non-monetary sanctions of a 90-day suspension from the designated doctor list and attendance at an educational seminar. The statute does not expressly provide that an ALJ may not consider monetary penalties and non-monetary sanctions in the same proceeding. To support his position that the ALJ's combined order and proposal for decision resulting in a separate Commission order was unauthorized, McWatt relies on the language of section 402.073(b), which provides that the ALJ shall issue the final decision in a hearing requested by a party charged with administrative violations. Specifically, the statute states that the ALJ shall "enter *the* final decision in the case after completion of the hearing." *Id.* § 402.073(b) (emphasis added). According to McWatt, the Legislature's use of the word "the" indicates that only one final decision may be rendered, and the ALJ is prohibited from taking any action other than issuing that order. In his brief, McWatt argues that "there was only to be one final decision and order, not a combined or dual proposal for decision and decision and order."

We are unpersuaded that the import of the Texas Legislature's use of the word "the" in subsection 402.073(b) is that the ALJ is prohibited from conducting a single hearing to consider the Division's request for both monetary penalties and non-monetary sanctions. The Texas Code Construction Act provides that "the singular includes the plural and the plural includes the singular." Tex. Gov't Code § 311.012(b). Consequently, the use of the singular "the decision" rather than the plural "the decisions" solves nothing insofar as statutory interpretation is concerned. Moreover,

10

subsection 402.073(b)'s reference to the ALJ's "final decision" on an administrative penalty does not by itself indicate an intent to preclude the Commission from imposing additional non-monetary penalties based on the ALJ's recommendation.

When construing statutes our primary objective is to give effect to the Legislature's intent. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). At issue here is whether the Legislature intended to prohibit an ALJ from considering requests for both monetary penalties and non-monetary sanctions in the same hearing. "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). Nowhere in the statute in effect at the time of the underlying proceedings was there an express proscription against the Division pursuing both monetary penalties and non-monetary sanctions for administrative violations in a single proceeding at SOAH before an ALJ. There is no evidence of the Legislature's intent to restrict the ALJ from hearing monetary penalty and non-monetary sanctions cases together and resolving them in accordance with section 402.073. *See* Tex. Lab. Code §§ 402.073(b) (ALJ makes final decision in monetary penalty cases); (c) (ALJ prepares PFD for Commissioner's consideration in non-monetary sanctions cases). In the absence of any indication of the Legislature's intent to do so, we will not read such a restriction into the statute. Moreover, to so construe the statute would result in the necessity of holding duplicative SOAH hearings, one to impose a non-monetary sanction and another to impose a monetary penalty, which, in our view, is an absurd result. We overrule McWatt's first issue.

11

In his second issue, McWatt asserts that the ALJ and the Commissioner did not have the authority to issue their orders and deprived him of his rights under the Texas Constitution because, at the time the Division conducted its audit, it had not yet adopted a rule implementing the "Performance Based Oversight" prescribed by the Legislature in 2005 amendments to the Texas Labor Code contained in House Bill 7 and codified as Labor Code section 402.075. *See* Tex. Const. art. I, § 19 (prohibiting deprivation of property without due course of law); Tex. Lab. Code § 402.075 (directing Commissioner to by rule adopt requirements that would provide incentives for overall compliance with Texas workers' compensation system and emphasize performance-based oversight linked to regulatory outcomes). McWatt also argues that the Commissioner retroactively applied administrative rule 180.19, a rule adopted in January 2008 implementing the new statute requiring "Performance-Based Oversight," to its audit of 2007 data in violation of his rights under the Texas Constitution. *See* Tex. Const. art. I, § 16 (prohibition against retroactive laws); *see also Satterfield v. Crown Cork & Seal Co., Inc.*, 268 S.W.3d 190 (Tex. App.—Austin 2008, no pet.). To understand McWatt's argument, some background on the statute and rule is necessary.

In 2005, the Texas Legislature passed legislation designed to revise the workers' compensation system by abolishing the Texas Workers' Compensation Commission and transferring its duties to the Texas Department of Insurance. *See* House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 7, 79th Leg., R.S. (2005). The changes to the workers' compensation system were intended to address criticism that the regulatory structure under the TWCC had little strategic direction, inefficient management, and no accountability. *Id.* The decision to transfer oversight of the system to the Department was based on that agency's demonstrated efficient regulation of the insurance industry. *Id.* As part of its goal of reforming the workers' compensation system, the Legislature

12

enacted Labor Code section 402.075, which directed the Commissioner to adopt, by rule, requirements that would "provide incentives for overall compliance with the workers' compensation system" and "emphasize performance-based oversight linked to regulatory outcomes." *See* Tex. Lab. Code § 402.075. Section 402.075 also provided that:

> Based on the [biennial] performance assessment [of insurance carriers and health care providers], the division shall develop regulatory tiers that distinguish among insurance carriers and health care providers who are poor performers, who generally are average performers, and who are consistently high performers. The division shall focus its regulatory oversight on insurance carriers and health care providers identified as poor performers.

*Id.* § 402.075(d).

Pursuant to the statutory directive contained in section 402.075, the Commissioner adopted administrative rule 180.19, effective January 16, 2008. *See* 28 Tex. Admin. Code § 180.19 (Tex. Div. of Workers' Comp., Incentives). The rule provided that the Division should assess, on a biennial basis, the performance of insurance carriers and health care providers and place them into one of three regulatory tiers—high, average, or poor performers—based on their level of compliance with the Labor Code and related rules. *Id.* § 180.19(c). As an incentive for attaining a high performance regulatory tier, an insurance carrier or health care provider placed in that tier was given public recognition and was permitted to use that designation as a marketing tool. *Id.* § 180.19(f). Insurance carriers and health care providers placed in the high or average performance tier were also given a limited audit exemption, the potential for lower penalties for incidences of non-compliance, and any other incentive the Commissioner deemed appropriate. *Id.* § 180.19(g). Thus, it is evident that the purpose of this rule was to create incentives for insurance carriers and health care providers to comply with the Labor Code and related rules, and to reward them for doing so.

McWatt now challenges the ALJ's and the Commissioner's orders assessing monetary penalties and non-monetary sanctions based on his non-compliance with reporting and record-keeping requirements on the ground that those orders are "void and of no effect" because the audit that resulted in those orders was conducted before the Division had adopted rule 180.19. McWatt argues that, until it adopted rule 180.19, the Division did not have authority to conduct a Performance-Based Audit. As previously noted, however, the audit the Division conducted in June 2008 was a Compliance Audit performed pursuant to Labor Code section 414.002 and administrative rule 180.3. *See* Tex. Lab. Code § 414.002 (providing that the Division "shall monitor for compliance with commissioner rules, this subtitle, and other laws relating to workers' compensation the conduct of persons subject to this subtitle" including health care providers); 28 Tex. Admin. Code § 180.3 (compliance audits). The Division's authority to conduct this compliance audit did not derive from Labor Code section 402.075 or rule 180.19, which relate to Performance-Based Oversight, but rather from section 414.002 and rule 180.3, which address Compliance Audits. Rule 180.3, which was originally adopted to be effective in January 1991, provides that the division shall "conduct Compliance Audits of the workers' compensation records of system participants and their agents for compliance with the Act and division rules." *Id.* Thus, the Division had the authority to conduct audits of McWatt's compliance with his reporting and record-keeping obligations under the Workers' Compensation Act even in the absence of rule 180.19.[10]

---

[10] We also observe that the goal of a rule 180.19 Performance Based Oversight assessment and designation of a regulatory tier is to provide incentives for system participants to endeavor to achieve maximum compliance with the applicable rules and statutes so they may obtain the benefits of a high-tier ranking. By contrast, the purpose of a rule 180.3 Compliance Audit is to identify instances of non-compliance that may result in further administrative action such as the assessment of penalties and sanctions.

McWatt suggests in his brief that the only basis for the June 2008 audit was his designation as a "Poor Tier" health care provider in 2007, prior to the adoption of administrative rule 180.19. He reasons that because, in his view, the Division did not have authority to designate him as a "Poor Tier" performer in 2007, a subsequent audit performed because of that designation was also unauthorized. This argument might be persuasive only if the Division's authority to conduct the June 2008 audit was dependent on McWatt's designation as a "Poor Tier" health care provider. As explained above, the Division had the authority to perform a compliance audit of McWatt irrespective of the regulatory tier in which he was placed. Although Labor Code section 402.075 directs the Division to focus its regulatory oversight on insurance carriers and health care providers identified as poor performers, that statute is not the source of the Division's authority to conduct compliance audits of system participants. Rather, Labor Code section 414.002 mandates that the Division monitor compliance, and rule 180.3 sets forth the manner in which those compliance audits are to be conducted. Neither the statute nor the rule places any limits on when or how often the Division may conduct a compliance audit. Nor do they specify that only poor performers are subject to audits. McWatt, like all other insurance carriers and health care providers participating in the workers' compensation system, was subject to a compliance review at any time.

The Division's 2008 compliance audit was authorized pursuant to Labor Code section 414.002 and administrative rule 180.3. Authority to conduct the audit did not depend on retroactive application of section 402.075 or administrative rule 180.19. We overrule McWatt's second issue.

15

*Interpretation and Application of Administrative Rule 130.1*

McWatt's third appellate issue challenges the ALJ's and the Commissioner's interpretation and application of administrative rule 130.1, which sets forth the reporting and record-keeping obligations that he was found to have violated. *See* 28 Tex. Admin. Code § 130.1.[11] Rule 130.1 provided, in pertinent part:

> (a)(3) A doctor who is authorized . . . to certify MMI, determine whether permanent impairment exists, and assign an impairment rating and who does, shall be referred to as the "certifying doctor."
>
> (d)(1) Certification of MMI, determination of permanent impairment, and assignment of an impairment rating (if permanent impairment exists) . . . requires completion, signing, and submission of the Report of Medical Evaluation and a narrative report.
>
> (d)(2) A Report of Medical Evaluation . . . *shall be filed* with the commission, injured employee, injured employee's representative, and the insurance carrier *no later than the seventh working day* after the later of:
>
> > (A) date of certifying examination; or
> >
> > (B) receipt of all the medical information required by this section.
>
> (d)(3) The Report of Medical Evaluation shall be filed as follows:
>
> > (A) The Report of Medical Evaluation shall be filed with the insurance carrier *by facsimile or electronic transmission*;
> >
> > (B) The Report of Medical Evaluation shall be filed with the commission, the injured employee and the injured employee's representative *by facsimile or electronic transmission if the doctor has been provided the recipient's facsimile number or email address; otherwise, the report shall be filed by other verifiable means.*

---

[11] Rule 130.1 was amended effective August 25, 2013. All references to rule 130.1 in this opinion are to the pre-amendment version in effect at the time of the audit and subsequent administrative actions that are the subject of this appeal.

(e) Documentation. The certifying doctor shall maintain the original copy of the Report of Medical Evaluation and narrative as well as documentation of:

(1) the date of the examination;

(2) the date any medical records necessary to make the certification of MMI were received, and from whom the medical records were received; and

(3) the date, addresses, and means of delivery that reports required under this section were transmitted or mailed by the certifying doctor.

*Id.* (emphases added). After conducting the compliance audit, the Division identified 66 instances in which McWatt failed to timely send the reports to the insurance carrier, 50 failures to transmit the reports to the insurance carrier by facsimile or electronically, and 50 failures to maintain documentation showing the date the reports were filed with the insurance carrier and the means used for transmittal. At the hearing before the ALJ, McWatt accepted responsibility for late-filing of a number of DWC Form-69s related to his evaluation of injured workers in an independent capacity rather than as a Concentra employee. For the remainder of the cases, however, McWatt maintained that Concentra was responsible for filing and keeping records related to those DWC Form-69s, and he could not be found liable for Concentra's failure to comply with rule 130.1. The ALJ disagreed and concluded that, while a certifying doctor was not prohibited from using an employer or service company to handle filing of DWC Form-69s on his behalf, he remained solely responsible for compliance with rule 130.1, and was liable for administrative penalties or sanctions arising from non-compliance. The ALJ found that McWatt committed substantially all the alleged violations. These violations were the basis for the monetary penalties and non-monetary sanctions ordered by the ALJ and the Commissioner.

McWatt advances numerous arguments to support his contention that the ALJ misinterpreted and misapplied rule 130.1. McWatt argues that the ALJ's and the Commissioner's interpretation of rule 130.1 to hold him responsible for Concentra's failure to timely file DWC Form-69s he prepared was erroneous. McWatt contends that the Division did not have the statutory authority to adopt a rule requiring that the certifying doctor timely file DWC Form-69s. McWatt asserts that the Labor Code merely provides that the certifying doctor "shall *issue* a written report," and says nothing about "filing" the report. *See* Tex. Lab. Code § 408.123 (addressing certification of MMI and evaluation of injured worker's impairment rating) (emphasis added). But the statute also requires that the report provide "any other information required by the commissioner to . . . the insurance carrier." *Id.* § 408.123(b)(3). Rule 130.1, which implements section 408.123, establishes the procedures for certifying doctors to complete and provide the DWC Form-69s to the interested parties, including by filing it with the insurance carrier. The Division had the authority to adopt rules requiring that reports containing information regarding an injured worker's MMI and impairment rating be filed with the insurance carrier, and rule 130.1 plainly does so.

To support his position that he may not be held liable for Concentra's failure to timely file a number of DWC Form-69s he prepared, McWatt points to the absence of the words "certifying doctor" in subsection (d)(2) of the rule, which sets forth the requirement that the report be filed and establishes the time limit for doing so. He argues that the omission of the words "certifying doctor" from this subsection evidences the Division's intent that the certifying doctor does not himself have to file his written report. The issue presented, however, is not who may file the report, which the ALJ agreed could be done by someone other than the certifying doctor, but who is ultimately

18

responsible for, and subject to administrative penalties for, the failure to timely comply with the filing requirement. The ALJ concluded that rule 130.1 requires that the certifying doctor ensure that the DWC Form-69 is timely filed with the insurance carrier by holding him responsible for his or his designee's failure to do so. Specifically, the ALJ stated in its PFD:

- Dr. McWatt's employment with Concentra had no effect on his statutory duty as a certifying doctor to comply with the Rule requirements regarding the timely filing of DWC Form-69s by the proper means, and maintenance of records showing that he did so.

- Although the Rule did not preclude Dr. McWatt from becoming a Concentra employee or from having Concentra file his DWC Form-69s, by doing so he bore the risk of personal liability for penalties and sanctions if Concentra failed to do so.

- Although Dr. McWatt may have a meritorious contract action against Concentra for its failure to properly handle the DWC Form-69s, Concentra's fault does not absolve Dr. McWatt's personal liability under the Rule.

- Dr. McWatt, and not Concentra, is responsible for the Rule violations proved by the Division.

We agree with the ALJ. This conclusion is compelled by the fact that rule 130.1 sets forth the reporting and record-keeping requirements *of the certifying doctor*, not of third parties who may not even be subject to the statutes and rules that form the jurisdictional basis for an enforcement proceeding. Although McWatt is not required by rule or statute to personally perform the act of filing the DWC Form-69, he remains liable for failures to comply with the required manner and means of filing as set forth in rule 130.1.

In his brief, McWatt states that "the Proposal for Decision and Order and the Official Order hold that McWatt did not have to comply with the policies and procedures maintained

19

by his employer," by making him liable for Concentra's failure to timely file his DWC Form-69s. Neither the PFD nor the orders, however, include any such express or implicit "holding." Rather, as set forth above, the PFD explains the ALJ's reasons for rejecting McWatt's contention that his status as a Concentra employee shielded him from liability for non-compliance with statutory duties of a certifying doctor under the Workers' Compensation Act. We also disagree with McWatt's characterization of the ALJ's and the Commission's finding that McWatt committed administrative violations as "effectively [holding] that McWatt should not have worked for Concentra or should have quit his employment with Concentra" and "effectively [holding] that McWatt should have engaged in misconduct by violating his employer's policies and procedures." The ALJ and the Commissioner confined their findings of fact and conclusions of law to the issue of whether the DWC Form-69s in cases for which McWatt was the certifying doctor were handled in compliance with rule 130.1. Neither the ALJ nor the Commissioner ordered that McWatt was obligated to perform the act of filing the DWC Form-69s himself, in contravention of his employer's policies and procedures dictating that the Concentra "front office" perform the filing. Rather, they held that McWatt, as certifying doctor, was ultimately responsible for Concentra's failures to comply with rule 130.1.

McWatt also asserts that assessing monetary penalties and non-monetary sanctions against him for administrative violations related to the filing and record-keeping done by Concentra violated his right to due process under the Texas Constitution. *See* Tex. Const. art. I, §§ 13, 19. He argues that his due process rights were violated because rule 130.1 did not provide him with fair notice that he personally had to file the DWC Form-69s or that he "could be punished for the alleged

20

actions and omissions of his employer." As set forth above, the ALJ did not conclude that McWatt had to personally file the DWC Form-69s, but rather that he, as the certifying doctor, was subject to administrative penalties in the event the forms were not filed in compliance with rule 130.1 regardless of by whom they were filed. The ALJ concluded that the certifying doctor is the party responsible for failures to properly file DWC Form-69s, regardless of whether the improper filing was done by the certifying doctor's employer, employee, or agent, or by the certifying doctor himself. The administrative penalties assessed against McWatt were based on his own actions and events for which he was legally responsible, not the actions of his employer.

Also included in McWatt's third issue is his contention that the ALJ and the Commissioner denied him due process by requiring him to establish his compliance with rule 130.1 when administrative rule 148.14(a) puts the burden of proving violations on the Division. *See* 28 Tex. Admin. Code § 148.14(a) (Tex. Div. of Workers' Comp., Burden of Proof). The Division's statutory burden of proof in an administrative penalty case is by a preponderance of the evidence. *Id.* § 148.14(b). Rule 130.1 required that McWatt, as a health care provider participating in the Texas workers' compensation system, file and maintain records demonstrating proper filing of all DWC Form-69s for which he was a certifying doctor. The Division had the authority to conduct a compliance audit to determine whether McWatt was meeting his reporting and record-keeping obligations. *See id.* § 180.3. During the audit process, McWatt was required to furnish the Division records reflecting his compliance with rule 130.1 *See id.* § 180.5 (Tex. Div. of Workers' Comp., Access to Workers' Comp. Related Records and Information). The Division's audit and findings that McWatt did not furnish records reflecting his compliance with rule 130.1 caused it to charge

21

him with reporting and record-keeping violations. Rather than consent to the charges and pay a proposed penalty, McWatt requested a hearing before an ALJ to challenge the charges. The ALJ agreed with the Division that McWatt had not maintained records showing timely filing of several DWC Form-69s in violation of administrative rule 130.1. The Division followed the proper procedure for conducting the audit that led to the hearing, afforded McWatt his due process rights, and met its burden of proving that McWatt violated rule 130.1 in numerous instances.

McWatt also contends that the ALJ's and the Commissioner's findings that he violated rule 130.1 were arbitrary because he produced records demonstrating compliance in all but 4 of the 87 cases reviewed by the Division. The ALJ found that McWatt failed to timely file the DWC Form-69 in 66 instances, failed to file the DWC Form-69 with the insurance carrier by facsimile or electronic transmission in 50 instances, and failed to maintain documentation in 50 instances.[12] McWatt asserts that he demonstrated compliance with the filing requirements by producing "screen shots" from Concentra's electronic records for 33 of the cases reviewed.[13] The ALJ found that the screen shots failed to demonstrate that a DWC Form-69 was sent to the insurance carrier by facsimile or electronic transmission as required by rule 130.1(d)(3)(A). First, the ALJ

_____

[12] McWatt devotes some of his briefing to the argument that the Division did not demonstrate that he failed to keep records of the date any medical records necessary to make a certification of MMI were received and from whom, as required by rule 130.1(e)(2), and that, in almost all of his cases, he provided the related medical narrative. We do not address these arguments because the basis for the ALJ's finding of improper record-keeping was that McWatt's records did not confirm the date the DWC Form-69s were filed or the means of transmittal, not any alleged failure to document the date of receipt of medical records necessary to certify MMI or to provide a medical narrative.

[13] In his brief, McWatt explains that a "screen shot" is a document Concentra's billing office could retrieve from its electronic records.

22

noted that electronic data interchange columns on the screen shots did not have the letter "Y," meaning "yes," which would have indicated that the records had been shared electronically.[14] Moreover, in the ALJ's view, Concentra's in-house counsel's testimony tended to show that the screen shots were an unreliable source for determining whether a DWC Form-69 had been sent by either facsimile or electronic transmission because they did not indicate whether the DWC Form-69 was actually transmitted electronically or whether it was mailed to the insurance carrier. The ALJ's conclusion that the screen shots did not show compliance with the filing requirements of rule 130.1 in 33 cases was not arbitrary.[15]

McWatt also argues that it was arbitrary for the ALJ to find non-compliance with the filing requirement for the 17 remaining cases for which screen shots were not provided because they could have been mailed to the insurance carrier. Rule 130.1 plainly requires that the certifying

---

[14] Electronic data interchange (EDI) is an electronic communication method that provides standards for exchanging data via any electronic means.

[15] McWatt also states in his brief that the Division erroneously rejected the validity of the screen shots for the separate reason that they did not show that a record transmitted by facsimile was actually received by the insurance carrier. McWatt correctly states that rule 130.1 required that a certifying doctor maintain records showing only that the DWC Form-69 was sent to the insurance carrier by facsimile, not records confirming receipt. *Compare* 28 Tex. Admin. Code § 130.1(e)(3) (Tex. Div. of Workers' Comp., Certification of Maximum Med. Improvement & Evaluation of Permanent Impairment) (requiring certifying doctor to maintain documentation of the "date, addressees, and means of delivery that reports required under this section were transmitted or mailed by the certifying doctor") *with id.* § 130.3(e) (Tex. Div. of Workers' Comp., Certification of Maximum Med. Improvement & Evaluation of Permanent Impairment by a Doctor Other Than the Treating Doctor) ("A doctor required to file a report under this section shall maintain . . . documentation of the date, addresses, facsimile numbers/email addresses and means of delivery that the reports required under this section were transmitted or mailed *including proof of successful transmission*.") (emphasis added). We note, however, that the ALJ found that the screen shots were insufficient not because they failed to show confirmation of receipt, but because they failed to demonstrate transmission of the record.

23

doctor transmit the DWC Form-69 to the insurance carrier by facsimile or electronic transmission. *See id.* § 130.1(d)(3)(A) ("The Report of Medical evaluation shall be filed with the insurance carrier by facsimile or electronic transmission.")  By contrast, the rule directs the certifying doctor to file the report with the commission, the injured employee, and the injured employee's representative "by facsimile or electronic transmission if the doctor has been provided the recipient's facsimile or email address; otherwise, the report shall be filed by other verifiable means." *Id.* § 130.1(d)(3)(B). For recipients other than the insurance carrier, the rule provides an alternative to facsimile or electronic transmission in the event the certifying doctor has not been provided with a fax number or email address.  The rule includes no such alternative for filing the report with the insurance carrier. To support his position that he could file the DWC Form-69 with the insurance carrier by mail, McWatt points to subsection 130.1(e)(3), which requires that the certifying doctor "maintain documentation of the date, addresses, and means of delivery that reports required under this section were *transmitted or mailed* by the certifying doctor."  The inclusion of the words "or mailed" in this subsection does not, as McWatt argues, mean that, contrary to subsection (3)(A)'s requirement that reports to insurance carriers be filed only by facsimile or electronic transmission, they may also be mailed.  Rather, inclusion of the words "or mailed" in subsection (e)(3) is accordant with the fact that, in certain circumstances, filing with the commission, employee, or employee's agent may be accomplished by means other than facsimile or electronic transmission.  Having concluded that the ALJ and the Commissioner did not misconstrue or misapply rule 130.1, we overrule McWatt's third appellate issue.

## Sanctions and Penalties

McWatt's fourth, fifth, and sixth appellate issues raise various challenges to the penalties and sanction imposed by the ALJ and the Commissioner. In his fifth issue, McWatt contends that the ALJ and the Commissioner acted arbitrarily and capriciously by assessing a penalty in an amount greater than authorized by Division rules, specifically the "base penalty rules" found in former administrative rules 180.11, 180.12, and 180.14-.18. These rules had been adopted to implement Labor Code section 415.021 as it existed before the amendments to the Workers' Compensation Act contained in House Bill 7. At that time, section 415.021(a) provided:

> The commission may assess an administrative penalty against a person who commits an administrative violation. Notwithstanding Subsection (c), the commission by rule shall adopt a schedule of specific monetary penalties for specific violations under this subtitle.

Act of June 17, 2001, 77th Leg., R.S., ch. 1456, § 6.07, sec. 415.021(a), 2001 Tex. Gen. Laws 5187 (amended 2005) (current version at Tex. Lab. Code § 415.021(a)). The "base penalty rules" contained the statutorily mandated schedule of penalties and the manner in which they were to be assessed. According to McWatt, the $15,000 penalty assessed in this case would exceed that which was authorized by the "base penalty rules."

In 2005, the Legislature significantly altered the agency's authority to assess administrative penalties for administrative violations. Since 2005, section 415.021(a) has provided:

> In addition to any other provisions in this subtitle relating to violations, a person commits an administrative violation if the person violates, fails to comply with, or refuses to comply with this subtitle or a rule, order, or decision of the commissioner. In addition to any sanctions, administrative penalty, or other remedy authorized by this subtitle, the commissioner may assess an administrative penalty against a person

who commits an administrative violation. The administrative penalty shall not exceed $25,000 per day per occurrence. Each day of noncompliance constitutes a separate violation. The commissioner's authority under this chapter is in addition to any other authority to enforce a sanction, penalty, fine, forfeiture, denial, suspension or revocation otherwise authorized by law.

Tex. Lab. Code § 415.021. The Legislature removed from the statute the requirement that the agency adopt and adhere to a penalty schedule that assessed an amount certain for each violation and granted greater discretion regarding the amount of the administrative penalty so long as it did not exceed $25,000. The penalty rules, which had become inconsistent with amended section 415.021(a), no longer had any force and effect. *See Gulf Coast Coal. of Cities v. Public Util. Comm'n*, 161 S.W.3d 706, 711 (Tex. App.—Austin 2005, no pet.) ("An agency can only adopt rules that are authorized by and consistent with its statutory authority."); *Hollywood Calling v. Public Util. Comm'n*, 805 S.W.2d 618, 620 (Tex. App.—Austin 1991, no writ) ("A rule may not impose additional burdens, conditions, or restrictions beyond or inconsistent with the statutory provisions."). The Division ultimately repealed the "base penalty rules" McWatt refers to and clarified that it was doing so "to conform Division rules to amendments made to the Labor Code by House Bill 7," and noting that "the rules were superseded by HB 7 amendments to Labor Code 415.021." *See* 35 Tex. Reg. 11902 (December 31, 2010). The repealed "base penalty rules" had no application to the ALJ's or the Commissioner's assessment of penalties for McWatt's administrative violations. We also reject McWatt's contention that, because the "base penalty rules" did not provide for it, the Commission had no authority to order McWatt to attend an educational seminar. This order was authorized by the version of administrative rule 180.26(h)(7) in effect at the time of the audit, which provided in pertinent part:

26

The sanctions that the commission may recommend or impose against a doctor or carrier under this section include, but are not limited to . . . mandatory participation in training classes or other courses as established or certified by the commission.

27 Tex. Reg. 1817, 1829-32, 1878 (2002).  We overrule McWatt's fifth issue.

In his fourth and sixth issues, McWatt argues that the ALJ and the Commissioner acted arbitrarily and capriciously by finding that he committed multiple violations of rule 130.1 rather than just one.  His arguments reduce to complaints that (1) the agency could not "break down" rule 130.1 into subsections and find discrete violations of different subsections but rather was limited to finding one violation of the entire rule; (2) he could not properly have been found to have violated the filing requirement with respect to the cases in which Concentra handled the DWC Form-69 filings because "there was no evidence that Concentra did not fax, electronically submit, or mail the DWC Form-69s," and (3) Labor Code section 415.0035(f) required that the Division find that he had committed previous administrative violations before finding that he engaged in multiple administrative violations.  *See* Tex. Lab. Code § 415.0035(f) (additional violations by insurance carrier or health care provider).

The ALJ found that McWatt violated rule 130.1 in three ways: (1) by failing to timely send DWC Form-69s to the insurance carrier in 66 instances, (2) by failing to send the DWC Form-69s to the insurance carrier by facsimile or electronic transmission in 50 instances; and (3) by failing to maintain required documentation in 50 instances.  McWatt argues that a violation of more than one subsection of a single rule can only properly be found to be a single violation, and that the ALJ erroneously found that each violation of a subsection of the rule constituted a separate violation and incorrectly found that he committed 166 separate administrative violations.  Even assuming

27

McWatt is correct, however, any such error does not require reversal of the ALJ's order assessing a monetary penalty or of the Commissioner's order assessing a non-monetary sanction. A reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for action taken by the agency. *Texas Health Facilities Comm'n*, 665 S.W.2d at 452. The ALJ found that McWatt failed to timely file DWC Form-69s in 66 of the cases reviewed. Failure to timely file required reports is a Class D administrative violation punishable by a penalty of up to $500. *See* Tex. Lab. Code §§ 415.0035(b)(1), (d) (health care provider commits administrative violation if he fails to timely file required reports or records and such violation is a Class D administrative violation); 415.022(4) (Class D administrative violation is punishable by administrative penalty not to exceed $500). The 66 Class D administrative violations alone support the ALJ's assessment of a $15,000 monetary penalty.

With regard to McWatt's contention that he could have filed the DWC Form-69s by mail and the ALJ erroneously found that he violated rule 130.1 by not filing them by facsimile or electronic transmission, we have already explained that the rule required a certifying doctor to file a DWC Form-69 with the insurance carrier by facsimile or electronic transmission.

Finally, we disagree with McWatt's contention that some prerequisite to finding that McWatt violated rule 130.1 on more than one occasion was not met. Relying on section 415.0035, McWatt argues that he could not be found to have committed "repeated administrative violations" unless he had previously been given notice of a prior administrative violation. *See id.* § 415.0035(f). Former section 415.0035(f), which was repealed effective September 2011, provided:

> A subsequent administrative violation under this section, after prior notice to the insurance carrier or health care provider of noncompliance, is subject to penalties as

provided by Section 415.021.  Prior notice under this subsection is not required if the violation was of a decision or order of the commissioner.

*Id*.  Thus, section 415.0035(f) governed when a health care provider could be subject to a penalty assessed by the Commissioner pursuant to section 415.021 in addition to the other administrative penalties that could be assessed under the statute, such as the penalty for Class D administrative violations.  Section 415.0035 has no bearing on whether an ALJ could find that a health care provider violated a particular administrative rule more than one time.  We also observe that the Commissioner did not, in fact, assess an additional monetary penalty under section 415.021.  Instead it ordered McWatt to attend an educational seminar.  We overrule McWatt's fourth and sixth issues.

## CONCLUSION

Having considered the various arguments advanced by McWatt in his six appellate issues and overruled each of his issues, we affirm the trial court's judgment affirming the ALJ's order assessing a monetary penalty against McWatt for violations of administrative rule 130.1 and the Commissioner's order assessing the non-monetary sanction of attendance at an educational seminar.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:  March 18, 2015